## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES**                                       **CRIMINAL ACTION**

**VERSUS**                                              **NO. 19-215**

**KAMAL AL JAWHARI**                                    **SECTION: "G"**

## ORDER AND REASONS

Pending before the Court is Defendant Kamal Al Jawhari's ("Defendant") Motion to Dismiss Indictment.[1] This matter is currently set for a retrial, after the original trial in this matter resulted in a hung jury. Defendant argues that the Indictment should be dismissed because he was denied the right to a fair trial by the jury to which his case was first presented, and a subsequent trial would compromise the fairness of the proceedings in violation of his constitutional rights.[2] The government opposes the motion.[3] On August 25, 2022, the Court issued an Order setting an interview with Juror 4 to resolve some factual issues raised by a voice message she left for the prosecutor.[4] The juror interview was held on September 7, 2022.[5] For the reasons discussed in detail below, Juror 4's statements during the interview reflect that there was disagreement amongst the jury as to whether the government proved an element of the offense. Therefore, the jury was genuinely deadlocked, and a retrial in this matter would not violate the Double Jeopardy Clause.

---

[1] Rec. Doc. 156.

[2] *Id.*

[3] Rec. Doc. 159.

[4] Rec. Doc. 161.

[5] Rec. Doc. 168.

1

Accordingly, considering the motion, the memoranda in support and in opposition, the juror interview, the record, and the applicable law, the Court denies the motion.

## I. Background

On October 18, 2019, Defendant was charged by an Indictment with:

### COUNT 1

On or about October 3, 2019, in the Eastern District of Louisiana, the defendant, **KAMAL AL JAWHARI,** knowing that he was an alien illegally and unlawfully in the United States, knowingly possessed a firearm and ammunition, to wit, a Winchester 12-gauge shotgun, Defender model, Serial # L1458249 and approximately 25 rounds of shotgun ammunition, and the firearm and ammunition were in and affecting commerce, in violation of Title 18, United States Code, Sections 922(g)(5)(A) and 924(a)(2).

### COUNT 2

On or about October 3, 2019, in the Eastern District of Louisiana, the defendant, **KAMAL AL JAWHARI,** knowing that he was an alien illegally and unlawfully in the United States, knowingly possessed a firearm and ammunition, to wit, a Taurus Model 9 millimeter Slim pistol, Serial # TJY045158 and approximately 25 rounds of shotgun ammunition, and the firearm and ammunition were in and affecting commerce, in violation of Title 18, United States Code, Sections 922(g)(5)(A) and 924(a)(2).[6]

This matter proceeded to trial on April 11, 2022.[7] Later that same day, the parties rested and the Court instructed the jury on the law.[8] In accordance with the Supreme Court's holding in *Rehaif v. United States*,[9] the Court instructed the jury that to convict Defendant of the charged offenses, the government must prove beyond a reasonable doubt that "at the time of the possession, the defendant knew that he belonged to the relevant category of person barred from possessing a

---

[6] Rec. Doc. 7.

[7] Rec. Doc. 128.

[8] *Id.*

[9] 139 S. Ct. 2191, 2200 (2019) ("We conclude that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.").

firearm and ammunition."[10] After being instructed on the law by the Court, the jury began its deliberations.[11] After deliberating for several hours, the jurors sent a note to the Court indicating that they were deadlocked.[12] The Court gave an *Allen* charge, then sent the jurors home for the evening.[13] Due to a scheduling conflict for one juror, the Court recessed until April 13, 2022 at 9:00 AM.[14] On April 13, 2022, the jury returned to continue its deliberations and, at the request of counsel, the Court reiterated the *Allen* charge.[15] After deliberating for several more hours, the jurors informed the Court that they were hopelessly deadlocked, and a verdict could not be reached.[16] Therefore, the Court declared a mistrial.[17] The defense did not object to the declaration of a mistrial.[18]

The following day, on April 14, 2022, the United States Attorney's Office for the Eastern District of Louisiana received a voice message from an individual who identified herself as Juror

---

[10] Rec. Doc. 146 at 355. Earlier in the trial there was some confusion over this element of the offense. On December 17, 2021, nearly four months before trial, the defense submitted a jury instruction that stated the third element required the government to prove that "[a]t the time of the possession, the defendant knew that his legal status precluded him from possessing firearms." Rec. Doc. 85 at 2. Despite submitting several supplemental instructions and an objection to another issue raised by the defense, the government did not object to this specific instruction or put the Court or the defense on notice that there was some disagreement as to this element. In fact, during a pretrial conference, the prosecutor told the Court that the jury instructions submitted by the defense were accurate.

[11] Rec. Doc. 128.

[12] Rec. Doc. 146 at 371.

[13] *Id.* at 373–74.

[14] *Id.* at 374–75.

[15] Rec. Doc. 147 at 2–6.

[16] *Id.* at 8.

[17] *Id.* at 10.

[18] *Id.* at 9.

4.[19]  The message stated:

> Good morning. My name is [REDACTED]. I was Juror Number 4 on the case this week that—the trial this week that—ended in a hung jury. And I just wanted to give you a little feedback. We were all in agreement that he was—um—Mr. Al Jawhari, or whatever, was guilty as—guilty as sin. But, because there was nothing in writing, in all the evidence, that showed that he'd ever been either told or um or had signed anything, maybe on his visa application, you know, saying that he understood that he was not allowed to own, possess a gun—uh—that was the hold up. And there were those of us who were just like we cannot—you know we can't say he is—we can't acquit this man because he is guilty as sin. But you know we thought maybe if we were a hung jury you would have a chance to put him—get—introduce evidence in the retrial. Because that is all you need to do. I mean. Anyway. So that's just my feedback.[20]

The United States Attorney's Office immediately forwarded the voice message to the Court, and the Court promptly disclosed it to the defense.[21]  The Court ordered the Clerk of Court to preserve a copy of the voice message in the record.[22]  The Court ordered the parties not to contact or interview any juror without requesting leave of Court.[23]

A new trial date was set for May 23, 2022,[24] but the trial date was then continued to August 29, 2022, at the request of the parties.[25]  On August 15, 2022, Defendant filed the instant Motion to Dismiss Indictment.[26]  On August 18, 2022, the government filed an opposition to the motion.[27]

---

[19] Rec. Doc. 132.

[20] Rec. Doc. 133.

[21] Rec. Doc. 132.

[22] *Id.*

[23] *Id.* (citing *United States v. Booker*, 334 F.3d 406, 416 (5th Cir. 2003)) (holding district court did not abuse its discretion denying post-trial juror interviews where there were no allegations of external influence).

[24] Rec. Doc. 135.

[25] Rec. Doc. 150.

[26] Rec. Doc. 156.

[27] Rec. Doc. 159.

On August 25, 2022, the Court set an interview with Juror 4 to attempt to resolve the factual issues raised by the voice message.[28] The Court also continued the trial date to December 19, 2022, to allow time for resolution of the instant motion.[29]

The juror interview was held on September 7, 2022.[30] Juror 4 confirmed that she left the April 14, 2022 voice message for the Assistant United States Attorney.[31] The Court asked Juror 4 why she called the AUSA, and Juror 4 responded that she called because she was "very frustrated."[32] When asked how she felt, Juror 4 responded:

> JUROR: So basically there were just a couple of us who were just like, no, sorry, we're just not going to -- we can't vote to acquit this person because we really feel like –
> THE COURT: So to be clear, in your message to Mr. Latsis you indicated that at least some of the jurors --and that's what you're saying now, including you --
> JUROR: Uh-huh.
> THE COURT: -- believed that Mr. Al Jawhari was guilty, but that the government did not carry its burden of proof?
> JUROR: Correct.[33]

Juror 4 indicated that "there was one person who was just like, you know, no . . . he's guilty," and elaborated that this juror wanted to vote to convict Defendant.[34] Juror 4 stated that other jurors believed Defendant was "guilty," but they did not believe the government had proven an element

---

[28] Rec. Doc. 161.

[29] *Id.*

[30] Rec. Doc. 168.

[31] *Id.* at 5.

[32] *Id.* at 6.

[33] *Id.* at 8.

[34] *Id.* at 9.

of the offense.[35] Juror 4 stated that the jurors believed Defendant knew he was in the country

illegally, but they did not believe that the government had shown that Defendant knew he could

not possess a firearm.[36] Juror 4 explained that there was a disagreement among the jurors because

some thought that the government should have presented written evidence showing that Defendant

knew "it's against the law for him to have – be in possession of, you know these guns and

ammunition."[37]  She concluded:

> It was really a group dynamic and it was -- you know, there were those who said
> they didn't prove it. They did not show us something in writing. You know, here
> are all these other things in writing. But then there were those of us who were like
> some things don't have to be in writing. Some things you learn because you've been
> here for how many years and you have relatives who are here and it's kind of like
> common knowledge.[38]

Following the juror interview, on December 6, 2022, Defendant filed a supplemental brief

in further support of the motion.[39]

## II. Parties' Arguments

### A.      *Defendant's Arguments in Support of the Motion*

Defendant argues that the Indictment should be dismissed because he was denied the right

to a fair trial by the jury to which his case was first presented, and a subsequent trial would

compromise the fairness of the proceedings in violation of the Double Jeopardy Clause. [40]

---

[35] *Id.* at 10.

[36] *Id.* at 10–11.

[37] *Id.* at 6–7.

[38] *Id.* at 12.

[39] Rec. Doc. 174.

[40] Rec. Doc. 156 at 1.

Defendant asserts that the voice message from Juror 4 reveals that all of the jurors felt that the government had proven that Defendant possessed a firearm but had failed to prove that he knew he belonged to the category of individuals who could not possess a firearm.[41]

Defendant asserts that the voice message from Juror 4 shows that "[t]he jury at his first trial was not simply deadlocked."[42] Defendant argues that the voice message reveals that the jury agreed that the government had not met its burden of proving that Defendant knew that he belonged to the category of people precluded from possessing a firearm.[43] Defendant avers that the voice message shows intentional misconduct by the jury; specifically, that "certain members of the jury conspired to preclude the jury from acquitting [him], as was the jury's obligation if they found that the government failed to meet its burden of proving each element of the offense."[44] Moreover, Defendant argues that "the fact that the jury refused to acquit, despite Juror 4 admitting that the government needed additional evidence to make its case, can reasonably be attributed to racial bias against [him] – a Lebanese national."[45]

## B.   *The Government's Arguments in Opposition to the Motion*

The government opposes the motion to dismiss.[46] The government reiterates that it is not

---

[41] Rec. Doc. 156-1 at 1.

[42] *Id.* at 4.

[43] *Id.*

[44] *Id.*

[45] *Id.* at 5. The Court does not summarize Defendant's arguments regarding Federal Rule of Evidence 606(b) as this issue was already addressed in the August 25, 2022 Order and Reasons. *See* Rec. Doc. 161.

[46] Rec. Doc. 159. Again, the Court does not summarize the government's arguments regarding Federal Rule of Evidence 606(b) as this issue was already addressed in the August 25, 2022 Order and Reasons. *See* Rec. Doc. 161.

required to prove that Defendant knew that he could not possess a firearm.[47] The government argues that Defendant's motion inaccurately paraphrases the voice message at issue, claiming the voicemail indicated "the government had failed to prove that [Defendant] knew he belonged to the category of individuals who could not possess a firearm."[48] However, the government points out that Juror 4 actually stated that the government failed to prove that Defendant "understood that he was not allowed to own, possess a gun," an element the government is not required to prove.[49] The government argues that Defendant urged the jury to apply the wrong law to the case, and, based on the voice message, the jury may have believed Defendant's incorrect argument that the government must prove Defendant knew he could not possess a firearm.[50] The government submits that Defendant "should not, now, be rewarded with a dismissal because of possible juror confusion at trial about the elements that the government is obligated to establish."[51]

The government asserts that the declaration of a mistrial resulting from a hung jury is a

---

[47] Rec. Doc. 159 at 5.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 7. As discussed above, early in the trial there was some confusion over the third element of the offense. The government received the defense's proposed jury instructions in December 2021, but it failed to object to the proposed instruction or put the Court or the defense on notice that there was some disagreement as to the third element of the offense. In fact, during a pretrial conference, the prosecutor told the Court that the jury instructions submitted by the defense were accurate. Moreover, the prosecutor did not object to defense counsel's statement during opening statements that Defendant did not know that his legal status "actually precluded him from possessing a firearm." Rec. Doc. 146 at 177. The issue was first raised during the charge conference. During closing arguments, defense counsel stated that the government failed to prove that Defendant was notified that "he belonged to the class of individuals who couldn't possess a firearm while his application was pending." *Id.* at 334. The government suggests that this argument was improper. However, it did not object during trial. Additionally, the government had an opportunity to provide a rebuttal argument. Moreover, the Court's instructions to the jury were correct. The jurors were instructed that they must accept the law as given to them in the instructions by the judge, not the lawyer's statements about the law.

[51] Rec. Doc. 159 at 7.

noted exception to the double jeopardy bar.[52] The government asserts that the Court went to great lengths to allow the jury an opportunity to reach a verdict, noting that the Court issued an *Allen* charge after the jury first declared it was deadlocked.[53] Additionally, the government points out that the defense did not object to the declaration of a mistrial.[54] However, the information giving rise to Defendant's motion did not arise until after the Court declared a mistrial. The government argues that Defendant "has failed to establish how he is entitled to dismissal of the indictment when longstanding precedent clearly establishes that double jeopardy does not apply to hung juries."[55]

### C.   *Defendant's Arguments in Further Support of the Motion*

In the supplemental brief, Defendant argues that the government has failed to meet its burden to justify the mistrial.[56] Defendant argues that the interview with Juror 4 "made it even more clear that the jurors in [his] case violated his due process rights such that a second trial in this case would be a violation of [his] right against Double Jeopardy."[57] Defendant asserts that the interview revealed that the jurors "all agreed that the government failed to meet its burden of proof."[58] Additionally, Defendant asserts that the juror interview made clear that the "hostility was

---

[52] *Id.*

[53] *Id.* at 8.

[54] *Id.*

[55] *Id.* at 9.

[56] Rec. Doc. 174 at 2.

[57] *Id.* at 3.

[58] *Id.* at 4.

rooted in [his] status as a foreign national in the United States."[59]

Defendant asserts that the juror interview conclusively established the following: "1) that the jury agreed that the government failed to meet its burden of proof, 2) that the jury understood the burden of proof, and 3) that certain jurors on the jury were not going to let Mr. Al Jawhari 'mak[e] a fool of us.'"[60] Defendant contends that the government could not have proven that Defendant knew he was in the country illegally, considering that Immigration Agent Bryan Huesman described Defendant's status as "in limbo."[61]  Defendant concludes that a retrial would violate the Double Jeopardy Clause because "certain rogue jurors refused to acquit . . . even though the prosecution failed to meet its burden."[62]

## III. Applicable Law

Pursuant to Rule 12(b)(1) of the Federal Rules of Criminal Procedure, [a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Rule 12(b)(3) allows the defense to raise a defect in the prosecution before trial. In the instant motion, Defendant argues that the Indictment should be dismissed because he was denied the right to a fair trial by the jury to which his case was first presented, and a subsequent trial would compromise the fairness of the proceedings in violation of his constitutional rights.[63]

"The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal

---

[59] *Id.*

[60] *Id.* at 5.

[61] *Id.* at 6.

[62] *Id.*

[63] Rec. Doc. 156 at 1.

proceeding against multiple punishments or repeated prosecutions for the same offense."[64]  As the

Supreme Court has explained:

> Underlying this constitutional safeguard is the belief that "the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."[65]

The Double Jeopardy Clause affords a defendant the right "to have his trial completed by

a particular tribunal."[66]  "More specifically, a defendant has a right to a complete trial by the jury

first selected and impaneled."[67]  The Supreme Court has made clear the reasons why this "valued

right" merits constitutional protection:

> Even if the first trial is not completed, a second prosecution may be grossly unfair. It increases the financial and emotional burden on the accused, prolongs the period in which he is stigmatized by an unresolved accusation of wrongdoing, and may even enhance the risk that an innocent defendant may be convicted. The danger of such unfairness to the defendant exists whenever a trial is aborted before it is completed. Consequently, as a general rule, the prosecutor is entitled to one, and only one, opportunity to require an accused to stand trial.[68]

"This guarantee recognizes the vast power of the sovereign, the ordeal of a criminal trial, and the

injustice our criminal justice system would invite if prosecutors could treat trials as dress rehearsals

until they secure the convictions they seek."[69]

---

[64] *United States v. Dinitz*, 424 U.S. 600, 606 (1976) (internal citations omitted).

[65] *Id.* (quoting *Green v. United States*, 355 U.S. 184, 187–88 (1957)).

[66] *Martinez v. Caldwell*, 644 F.3d 238, 243 (5th Cir. 2011) (quoting *Wade v. Hunter*, 336 U.S. 684, 689 (1949)).

[67] *Id.* (citing *United States v. Scott*, 437 U.S. 82, 93–94 (1978)).

[68] *Arizona v. Washington*, 434 U.S. 497, 503–05 (1978) (footnotes omitted).

[69] *Currier v. Virginia*, 138 S. Ct. 2144, 2149 (2018).

If a defendant's first trial is terminated prior to verdict, "the circumstances of the termination determine whether the Fifth Amendment bars retrial."[70] "If the trial is terminated over defense objection, retrial is prohibited absent 'manifest necessity.'"[71] The Supreme Court has explained that "there are degrees of necessity" and a "high degree is required before concluding that a mistrial is appropriate."[72]

In assessing whether retrial should be barred, the Supreme Court has established a sliding scale of scrutiny.[73] The strictest scrutiny is applied when the mistrial was premised on bad faith conduct by the judge or prosecutor, and the most relaxed scrutiny is employed when the mistrial was premised on a deadlocked jury.[74] Therefore, "[a] hung jury is 'the prototypical example' of manifest necessity."[75] Accordingly, "without exception, [] courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial."[76]

## IV. Analysis

Defendant asserts that the voice message from Juror 4 reveals that all of the jurors felt that the government had proven that Defendant possessed a gun but had failed to prove that he knew he belonged to the category of individuals who could not possess a firearm.[77] Defendant asserts

---

[70] *Martinez*, 644 F.3d at 243.

[71] *Id.* (quoting *Oregon v. Kennedy*, 456 U.S. 667, 672 (1982)).

[72] *Washington*, 434 U.S. at 506.

[73] *Id.* at 508–09.

[74] *Id.*

[75] *Martinez*, 644 F.3d at 243 (quoting *Kennedy*, 456 U.S. at 672).

[76] *Washington*, 434 U.S. at 509.

[77] Rec. Doc. 156-1 at 1.

that the message reveals that "some of the jurors would not allow the jury to acquit, and [they] wanted to ensure a mistrial instead so that the government could have a second chance to introduce new evidence at a retrial. . . ."[78]

In the voice message, Juror 4 stated:

> Good morning. My name is [REDACTED]. I was Juror Number 4 on the case this week that—the trial this week that—ended in a hung jury. And I just wanted to give you a little feedback. We were all in agreement that he was—um—Mr. Al Jawhari, or whatever, was guilty as—guilty as sin. But, because there was nothing in writing, in all the evidence, that showed that he'd ever been either told or um or had signed anything, maybe on his visa application, you know, saying that he understood that he was not allowed to own, possess a gun—uh—that was the hold up. And there were those of us who were just like we cannot—you know we can't say he is—we can't acquit this man because he is guilty as sin. But you know we thought maybe if we were a hung jury you would have a chance to put him—get—introduce evidence in the retrial. Because that is all you need to do. I mean. Anyway. So that's just my feedback.[79]

As discussed in detail in the Order and Reasons setting the juror interview, this voice message was troubling to the Court. As the Court previously explained, the voice message could be interpreted to suggest that some jurors would not allow the jury to acquit because, even though they thought there was insufficient evidence to convict, they nevertheless thought Defendant was guilty. Moreover, the voicemail suggested that at least some jurors may have thought that if they were a hung jury, the prosecution would get the chance to introduce additional or more persuasive evidence in a retrial. In fact, that appeared to be the purpose behind Juror 4's call to the prosecutor—to inform the prosecutor of the element for which she stated the jury believed there was insufficient evidence to convict. The voice message also suggested that there may have been juror confusion about the elements of the offense.

---

[78] *Id.*

[79] Rec. Doc. 133.

Following the Supreme Court's decision in *Rehaif v. United States*, the government must prove that "the defendant knew he belonged to the category of persons barred from possessing a firearm."[80] "'[T]he defendant's status is the crucial element separating innocent from wrongful conduct[,]' so if a defendant does not know that he is unlawfully in the United States, then he 'does not have the guilty state of mind that the statute's language and purposes require.'"[81]   In this case, there was evidence that Defendant had filed for permanent residency several times and there were issues about the clarity of the notices he had received regarding his status. Although the law does not require that the government show that Defendant knew he was prohibited from possessing a firearm, the government must show that he knew he was illegally and unlawfully present in the United States (which is the "relevant category of persons barred from possessing a firearm").[82]

In light of Juror 4's voicemail, the Court ordered the juror interview in an attempt to provide clarity on whether the jury was truly deadlocked. Defendant argues that the interview with Juror 4 "made it even more clear that the jurors in [his] case violated his due process rights such that a second trial in this case would be a violation of [his] right against Double Jeopardy."[83] Defendant asserts that the interview revealed that the jurors "all agreed that the government failed to meet its burden of proof."[84]   The Court disagrees with this characterization of Juror 4's

---

[80] *Rehaif*, 139 S. Ct. at 2200 ("We conclude that in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."); *United States v. Beasley*, 832 F. App'x 314, 315 (5th Cir. 2020) (finding that "the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm.").

[81] *United States v. Puri*, 797 Fed. App'x 859, 863 (5th Cir. 2020) (quoting *Rehaif*, 139 S. Ct. at 2197–98).

[82] *United States v. Trevino*, 989 F.3d 402, 405 (5th Cir. 2021) (stating that Fifth Circuit caselaw has "not required the Government to prove knowledge of the statutory prohibition contained in § 922(g)").

[83] Rec. Doc. 179 at 3.

[84] *Id.* at 4.

statements.

Juror 4's statements revealed that some of the jurors thought the government had not proven an element of the offense because there was nothing "in writing" showing that Defendant was ever told he could not possess a firearm, while others felt that the government did not need to present written evidence.[85] Juror 4 admittedly made the troubling statement that "a couple of us" thought that Defendant was "guilty" despite believing that the government failed to prove an element of the offense.[86] Nevertheless, Juror 4 was clear that at least one juror believed the government had proven its case.[87] Juror 4 also stated that the jurors believed Defendant knew he was in the country illegally, but several jurors did not believe that the government had shown that Defendant knew he could not possess a firearm.[88]

Evaluated as a whole, Juror 4's statements clearly show that there was juror confusion over the elements of the offense. Juror 4 (and possibly other jurors) believed that the government had to prove that Defendant knew he was prohibited from possessing a firearm. This is not an element of the offense that the government must prove. Nevertheless, Juror 4's statements were clear that there was an irreconcilable disagreement among members of the jury, with at least one juror wanting to convict on the basis that the government had met its burden of proof and others believing that the government had not met its burden.

"A hung jury occurs when there is an irreconcilable disagreement among the jury

---

[85] Rec. Doc. 168 at 12.

[86] *Id.* at 8, 10.

[87] *Id.* at 9 ("[T]here was one person who was just like, you know, no . . . he's guilty.").

[88] *Id.* at 10–11.

members."[89]  Put another way, a hung jury results when the jurors are "genuinely deadlocked."[90]

The term "genuinely deadlocked" suggests more than an impasse; it invokes a moment where, if

deliberations were to continue, "there exists a significant risk that a verdict may result from

pressures inherent in the situation rather than the considered judgment of all the jurors."[91]

"Requiring a jury to continue deliberations despite genuine and irreconcilable disagreement more

often than not defeats the ends of public justice; not only will such compulsion needlessly waste

valuable judicial resources, it may coerce erroneous verdicts."[92]

      The Court is convinced that the jury was genuinely deadlocked in this case. The Court went

to great lengths to allow the jury an opportunity to reach a verdict. The jury began its deliberations

on the evening of April 11, 2022.[93]  After deliberating for several hours, the jurors sent a note to

the Court indicating that they were deadlocked.[94]  The Court gave an *Allen* charge, then sent the

jurors home for the evening.[95]  Due to a scheduling conflict for one juror, the Court recessed until

April 13, 2022 at 9:00 AM.[96]  On April 13, 2022, the jury returned to continue its deliberations,

and at the request of counsel the Court reiterated the *Allen* charge.[97]  After deliberating for several

more hours, the jurors informed the Court that they were hopelessly deadlocked, and a verdict

---

[89] *Brazzel v. Washington*, 491 F.3d 976, 982 (9th Cir. 2007).

[90] *Id.* (quoting *Richardson*, 468 U.S. at 324–25).

[91] *Washington*, 434 U.S. at 509.

[92] *United States v. Goldstein*, 479 F.2d 1061, 1068 (2d Cir. 1973).

[93] Rec. Doc. 128.

[94] Rec. Doc. 146 at 371.

[95] *Id.* at 373–74.

[96] *Id.* at 374–75.

[97] Rec. Doc. 147 at 2–6.

could not be reached.[98] Therefore, the Court declared a mistrial.[99] At that time, the defense did not object to the declaration of a mistrial.[100]

   "If the trial is terminated over defense objection, retrial is prohibited absent 'manifest necessity.'"[101] "A hung jury is 'the prototypical example' of manifest necessity."[102] Accordingly, "without exception, [] courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial." [103] Considering all of these circumstances and the statements made by Juror 4 during the interview, the Court concludes that the jury was genuinely deadlocked in this case. Therefore, retrial does not violate double jeopardy.

   As mentioned above, the Court is most troubled by Juror 4's statement that "a couple of us" thought that Defendant was "guilty" despite believing that the government failed to prove an element of the offense.[104] This statement suggests that several of the jurors were not obeying the Court's instructions and adhering to their oath.[105] "[J]uror compliance with instructions, along with fidelity to their oath, is important in preserving the sanctity of jury verdicts."[106] Information regarding certain jurors' failure to follow their oath did not come to light until after the jurors had

---

[98] *Id.* at 8.

[99] *Id.* at 10.

[100] *Id.* at 9.

[101] *Martinez*, 644 F.3d at 243 (quoting *Kennedy*, 456 U.S. at 672).

[102] *Id.* (quoting *Kennedy*, 456 U.S. at 672).

[103] *Washington*, 434 U.S. at 509.

[104] Rec. Doc. 168 at 8, 10.

[105] *See United States v. Ebron*, 683 F.3d 105, 125 (5th Cir. 2012) ("While the institutional interest in the secrecy of juror deliberations is important, district courts also have a duty, and the concomitant authority, to ensure that jurors are obeying instructions and adhering to their oath.").

[106] *Id.*

informed the Court that they were hopelessly deadlocked, and a mistrial was declared. If "substantial evidence of jury misconduct" had come to light during deliberations, Fifth Circuit precedent would have authorized the Court to investigate the situation.[107]

Additionally, a juror's "inability to follow instructions" would be a valid basis to dismiss a juror, even after deliberations had begun.[108] Juror 4's statements suggest that she and several other jurors did not want to vote to acquit even though they believed the government had not proven its case. Had information come to light during deliberations suggesting that multiple jurors were not abiding by their oath or following the Court's instructions, this may have been an independent ground for a mistrial.[109] Defendant suggests that these jurors may have been motivated by bias because he is a Lebanese national. "Neither party has a right to have his case decided by a jury which may be tainted by bias."[110] When evidence of juror bias comes to light, "the public's interest in fair trials designed to end in just judgements must prevail over the defendant's valued right to have his trial concluded before the first jury impaneled."[111] Therefore, if evidence of juror bias and alleged failures to follow their oath had come to light during trial, this would have been an alternative basis for granting a mistrial.

---

[107] *Id.* ("While exercising due caution, a district court may conduct an investigation in situations where it is presented with substantial evidence of jury misconduct.").

[108] *Id.* at 127 (internal citations omitted).

[109] *Id.* at 129 ("When presented with this motion [for a mistrial], the district court had the option of making one of two discretionary decisions: (1) it could have declared a mistrial based on the problems the jury was having and the introduction of extrinsic information into deliberations; or (2) it could have dismissed Johnson and replaced her with an alternate. Given the availability of the latter option, the district court was not faced with 'urgent circumstances' which would have made a mistrial a manifest necessity."), Here, only one alternate juror was empaneled. If information had come to light regarding multiple jurors failing to abide by their oaths due to alleged bias, the Court would have had no choice but to declare a mistrial.

[110] *Washington*, 434 U.S. at 516.

[111] *Id.* (internal citations and quotation marks omitted).

## V. Conclusion

"If the trial is terminated over defense objection, retrial is prohibited absent 'manifest necessity.'"[112] "A hung jury is 'the prototypical example' of manifest necessity."[113] Accordingly, "without exception, [] courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial."[114] Considering all of these circumstances and the statements made by Juror 4 during the interview, the Court concludes that the jury was genuinely deadlocked in this case. Therefore, retrial does not violate double jeopardy.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Kamal Al Jawhari's Motion to Dismiss Indictment[115] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this <u>12th</u> day of December, 2022.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[112] *Martinez*, 644 F.3d at 243 (quoting *Kennedy*, 456 U.S. at 672).

[113] *Id.* (quoting *Kennedy*, 456 U.S. at 672).

[114] *Washington*, 434 U.S. at 509.

[115] Rec. Doc. 156.

19